**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Allen I. Javinsky,

        Plaintiff,

v.

Hartford Life Insurance Company,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civ. No. 09-888 ADM/AJB

_____

Michael W. Lowden, Esq., The Lowden Law Firm, Minnetonka, MN, on behalf of Plaintiff.

Eric C. Tostrud, Esq. and David W. Asp, Esq., Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

On January 28, 2010, the undersigned United States District Judge heard oral argument on Plaintiff Allen I. Javinsky's ("Javinsky") Motion for Summary Judgment [Docket No. 15] and Defendant Hartford Life Insurance Company's ("Hartford") Motion for Summary Judgment [Docket No. 12]. The pivotal issue is whether Javinsky's total disability resulted from injury or sickness as those terms are defined under his disability income insurance policy. Javinsky seeks a ruling that his disability is due to injury, entitling him to monthly benefits for the rest of his life. Hartford seeks a ruling that Javinsky's disability is due to sickness, which would mean that Hartford appropriately terminated his monthly benefits at age 65. For the reasons set forth below, both Motions are denied.

## II. BACKGROUND[1]

**A. The Policy**

Javinsky worked as a self-employed civil engineer and constructor. Tostrud Aff. [Docket No. 25], Ex. 4 at HART000729. In 1992, he purchased professional disability income insurance coverage through a master policy underwritten by Commercial Life Insurance Company (the "Commercial Life/UNUM Policy")[2] and held by Wisconsin Group Insurance Trust. Id. Ex. 1. The Commercial Life/UNUM Policy provided Javinsky benefits of $4,000 per month in the event of total disability. Id. at 00001, 00008. If the disability was due to an injury caused by an accident, the monthly benefits were to be paid for Javinsky's lifetime. Id. at 00008. If, on the other hand, the disability resulted from sickness, monthly benefits were payable until age 65. Id.

In August, 2000, Javinsky's insurance agent, Morrisey Agency, Inc. ("Morrisey Agency"), notified him by letter that the underwriter of his insurance plan was changing to Hartford. Pl. Ex. 3 at 00014. The letter stated that "current benefits, conditions, limitations, and premium structure will *remain unchanged*." Id. (emphasis in the original). The letter also advised that "[c]laims incurred on or after September 1, 2000 will be subject to the terms, conditions, and limitations of the new policy underwritten by Hartford Life Insurance Company and are the responsibility of Hartford Life Insurance Company." Id. The policy underwritten

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). As both parties have moved for summary judgment, disputed facts are noted.

[2] Because Commercial Life Insurance Company was later acquired by UNUM Life Insurance Company, the policy will be referred to herein as the "Commercial Life/UNUM Policy."

by Hartford (the "Hartford Policy ") contained a transition rider providing that a "period of Total Disability or Partial Disability, including any applicable Waiting Period under the Policy, which begins on or after July 1, 2000 will be eligible for coverage under the [Hartford] Policy." Tostrud Aff., Ex. 3 at HART 000002.

Consistent with the Commercial Life/Unum Policy, benefits total disability under the Hartford Policy are payable for the insured's lifetime when the total disability is due to injury but only to age 65 when due to sickness.[3] Pl. Ex. 4 at 00021. "Injury" is defined by the Hartford Policy as "bodily injury which results directly and independently from all other causes from an accident. Loss or disability due to an injury must begin within 365 days of the accident or it will be considered as due to sickness." Id. at 00018. The Hartford Policy does not define "disability."

### B. Javinsky's Disability Insurance Claims

On December 12, 1996, Javinsky was involved in an automobile accident. Pl. Ex. 5 at 00092. Following the accident, he suffered from headaches, ringing in his ears, and pain in his neck and upper back which radiated into his arms. Id. In February 1997, Javinsky filed a claim for disability benefits under the Commercial Life/UNUM Policy. Id. Javinsky submitted an Attending Physician's Statement including work restrictions prohibiting him from lifting over fifteen pounds, lifting repetitively, bending or stooping, and reaching overhead. Id. at 00093. Javinsky's claim was approved, and he received monthly benefits while he was unable to work and after he returned to work with restrictions. Pl. Ex. 6 at 00413. His benefits were later

---

[3] Both the Commercial Life/UNUM and Hartford Policies further require the insured to be within certain age requirements at the time a total disability begins. See Tostrud Aff., Ex. 3 at HART000011; Pl. Ex. 4 at 00021. It is undisputed that Javinsky meets the age requirements under either policy.

terminated when his income exceeded his pre-accident income. Id.

From 1997 to 2003, Javinsky sought medical treatment for neck and arm pain that began after the accident, as well as for lower back and leg pain that began before the accident. Pl. Ex. 8 at 00190-91, 0097-99, 00201-02, 00205. Javinsky's medical records reflect that his neck and arm pain was due to cervical sprain and strain, as well as multi-level cervical disc herniation and multi-level degenerative disc disease. Id. at 00190, 00192, 00197-98, 00205. The medical records also include observations that the accident exacerbated a previous lower back sprain and strain. Id. at 00193, 00199, 00201-02.

On October 11, 2002, Javinsky filed a claim for total disability with Hartford. Pl. Ex. 9. The claim stated that as of August 27, 2002 Javinsky was unable to perform the substantial duties of his occupation due to pain and limitations in his neck, shoulder, and arm. Id. at 00090. The claim identified the cause of the pain as being a degenerative disc condition that began after the 1996 motor vehicle accident and had progressively worsened since late 2001. Id.

On January 16, 2003, Hartford sent a letter to Javinsky informing him that his claim had been approved and he would begin receiving monthly payments after satisfying the Policy's seven-day, non-payable waiting period. Pl. Ex. 10 at 00385. The waiting period applies to sickness total disability benefits but not to accident total disability benefits. Tostrud Aff., Ex. 3 at HART 000011; Pl. Ex. 4 at 00021. Hartford made total disability payments to Javinsky until his 65th birthday in December 2007, at which time Hartford terminated benefits because it considered Javinsky's total disability to be due to sickness and not an accident. Pl. Exs. 6, 11.

Javinsky filed this breach of contract action against Hartford alleging he is entitled to lifetime benefits under the Policy because his disability is due to injury. Compl. [Docket No. 1]

4

at 3-6. The cross motions for summary judgment followed.

## III. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment shall issue "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

### B. Applicable Insurance Policy

The parties disagree whether the terms of the Hartford Policy or the Commercial Life/UNUM Policy apply, however they both assert that the operative provisions of the policies contain no material differences that would affect the outcome of the cross motions. Javinsky contends he is entitled to lifetime benefits under either policy, and Hartford argues Javinsky's benefits end at age 65 under either policy.

The Court concludes that the Hartford Policy applies. The transition rider to the Hartford Policy states that a period of total or partial disability beginning on or after July 1, 2000, will be eligible for coverage under the Hartford Policy. Tostrud Aff., Ex. 3 at HART 000002.

5

Javinsky's period of total disability began August 27, 2002. Pl. Ex. 9. Therefore, his period of total disability is covered under the Hartford Policy.

For two reasons, the Court is not persuaded by Javinsky's argument that the Morrisey Agency's letter stating that benefits, conditions, and limitations would remain the same under the Hartford Policy dictate that the Commercial Life/UNUM terms should apply. First, the Morrisey Agency letter is internally contradictory. Three paragraphs after stating that the benefits, conditions, and limitations would remain unchanged under the Hartford Policy, the letter states that "[c]laims incurred on or after September 1, 2000 will be subject to the terms, conditions, and limitations of the new policy underwritten by Hartford." Pl. Ex. 3 at 00014. Second, the Hartford Policy states that "[n]o agent has authority to change or waive any part of the Policy. To be valid, any change or waiver must be in writing, approved by one of [Hartford's] officers and made a part of the Policy." Tostrud Aff., Ex. 3 at 000028. There is no evidence that a Hartford officer approved a change in the terms of the Hartford Policy applicable to Javinsky. Thus, the Court will apply the terms of the Hartford Policy to the present dispute.

### C. Choice of Law

The parties also disagree as to whether Minnesota law or Wisconsin law governs the interpretation of the Hartford Policy. Javinsky argues that Minnesota law applies because he is Minnesota resident, he practices his occupation in Minnesota, and his insurance policy was delivered to him in Minnesota. Hartford responds that Wisconsin law applies because that is the state where the group policy was delivered.

"Federal courts use the choice of law rules of the state in which the court sits." In re Master Mortgage Inv. Fund, Inc., 151 B.R. 513, 518 (Bankr. W.D. Mo. 1993) (citing Klaxon v.

6

Stentor Elec. Mfg. Co., 313 U.S. 487, 490-98 (1941); Jump v. Goldenhersh, 619 F.2d 11, 13 (8th Cir. 1980)). Under Minnesota law, a court must first determine whether the choice of one state's law over another creates an actual conflict that will be outcome determinative. Hague v. Allstate Ins. Co., 289 N.W.2d 43, 46-47 (Minn. 1978); Jepson v. Gen. Cas. Co. of Wis., 513 N.W.2d 467, 469 (Minn. 1994). Where no conflict exists, there is no choice of law issue. Vetter v. Sec. Cont'l Ins. Co., 567 N.W.2d 516, 521-22 (Minn. 1997). Therefore, the Court must determine whether interpreting the Hartford Policy under Minnesota law would result in a different outcome than if the Hartford Policy were interpreted under Wisconsin law.

Minnesota and Wisconsin courts follow nearly identical canons of construction for interpreting insurance contracts. Under both Minnesota and Wisconsin law, the interpretation of an insurance contract is a question of law for the court to decide. Jenoff v. N.H. Ins. Co., 558 N.W.2d 260, 262 (Minn. 1997); Wanzek Constr., Inc. v. Employers Ins. of Wausau, 679 N.W.2d 322, 324 (Minn. 2004); Whirlpool Corp. v. Allstate Ins. Co., 539 N.W.2d 883, 886 (Wis. 1995); Peterson v. Pa. Life Ins. Co., 669 N.W.2d 151, 154 (Wis. Ct. App. 2003). Courts must construe insurance policies to give effect to the intention of the parties. Jenoff, 558 N.W.2d at 262; Caporali v. Wash. Nat'l Ins. Co., 307 N.W.2d 218, 221 (Wis. 1981). Undefined terms in an insurance policy must be given their plain, common, ordinary, or popular meaning. Jenoff, 558 N.W.2d at 262; Minn. Mining & Mfg. Co. v. Travelers Indem. Co., 457 N.W.2d 175, 179 (Minn. 1990); Froedtert Mem'l Lutheran Hosp. Inc. v. Nat'l States Ins. Co., 765 N.W.2d 251, 260-61 (Wis. 2009); Folkman v. Quamme, 665 N.W.2d 857, 865 (Wis. 2003). Minnesota and Wisconsin courts commonly rely on the dictionary to ascertain the ordinary and commonly accepted meaning of an undefined term in an insurance policy. See, e.g., Gen. Cas. Co. of Wis.

7

v. Wozniak Travel, Inc., 762 N.W.2d 572, 577 (Minn. 2009) (referencing with approval a Wisconsin court's use of the dictionary to construe "title" and "trademark"); Caporali, 307 N.W.2d at 221-22 (resorting to the dictionary for meaning of "accident"); Whirlpool, 539 N.W.2d at 886 (utilizing the dictionary definitions of "direct" and "indirect"); Kozak v. U.S. Fid. & Guar. Co., 355 N.W.2d at 364 (Wis. Ct. App. 1984) (stating that "[i]n determining the ordinary and commonly accepted meaning of the terms used in an insurance policy, it is appropriate to look to definitions in a recognized dictionary," and consulting Webster's Third New International dictionary to determine the ordinary meanings of "convert" and "embezzlement").

The dispute here turns on the meaning of the undefined term "disability," as it is used in the Hartford Policy's definition of "injury." The Hartford Policy defines injury as "bodily injury which results directly and independently of all other causes from an accident. Loss or disability due to injury must begin within 365 days of the accident or it will be considered as due to sickness." Tostrud Aff., Ex. 3 at HART 000030.

Javinsky contends "disability" must be given its common usage and that in Minnesota the term disability has been defined as "anything affecting the normal and mental abilities of a person." Pl. Mem. of Law in Supp. of Summ. J. [Docket No. 18] at 7 (citing Thomas v. Western Nat'l Ins. Group., 562 N.W.2d 289, 291 (Minn. 1997)). Javinsky asserts that the neck and arm pain that has rendered him totally disabled is a disability that began within 365 days of the accident and has persisted since the accident. Javinsky views his neck and arm pain to be a disability because it has limited his work-related activities and requires medical treatment.

In contrast, Hartford argues "disability" means a disability for which benefits are payable

under the Policy. Hartford urges that Javinsky's interpretation would defeat the purpose of the policy's 365-day time limitation, which Hartford effectively contends is designed to establish a bright line rule for determining when a claim must be filed to constitute a claim for total disability due to injury. Hartford further argues that the term "disability" acts as a catch-all to refer to the various disability benefits available under the Hartford Policy, such as total disability benefits and residual disability benefits.

The plain, common, and ordinary meaning of the undefined term "disability" is "a physical or mental condition . . . that limits a person's movements, activities, or senses." I The Oxford English Dictionary 694 (6th ed. 2007). Under this definition, Javinsky's neck and arm pain amounts to a disability if, as Javinsky alleges, the pain limits his work activities as an engineer/constructionist.[4] Javinsky represents an unusual situation in the sense that due to the thriving industry in which he worked, his benefits were terminated because he was able to earn more than his pre-accident income despite coping with a persistent condition that prevented him from fully performing a number of work-related activities. Nevertheless, Javinsky's condition is considered a "disability" in the common and ordinary sense of the word, and that disability, which allegedly manifested within 365 days of the 1996 motor vehicle accident, has continued to this day.

This construction of "disability" also comports with the intent of the parties to provide lifetime compensation for an accidental injury that affects an insured's ability to work.[5] If

---

[4] A fact issue remains as to whether his lower back pain also contributed to his work restrictions.

[5] A physical or mental condition that does not limit an insured's work activities may yield a different result.

Hartford's intent was to limit the term "disability" to a disability for which benefits are payable, then Hartford, as the drafter of the policy, could have done so. "Either it was not [the policy drafter's] intent to limit the effect of the policy or the policy was drafted ineptly. In either event, it must be construed to favor the insured and not the insurance company." Caporali, 307 N.W.2d at 677.

Because the Court arrives at the same interpretation of "disability" under either Minnesota or Wisconsin law, the choice of law issue is not reached.[6]

### D. Hartford's Summary Judgment Motion

Hartford bases its summary judgment motion on the argument that under the clear language of the Hartford Policy, Javinsky is ineligible for lifetime disability benefits because he filed his claim for disability more than 365 days after the accident and, therefore, the claimed disability must be viewed as one due to sickness. As discussed above, this argument fails, and Hartford's Motion is denied.

### E. Javinsky's Summary Judgment Motion

Javinsky argues he is entitled as a matter of law to lifetime monthly disability benefits because his disability is due to an injury defined under the Hartford Policy as "bodily injury which results directly and independently of all other causes from an accident. Loss or disability due to injury must begin within 365 days of the accident or it will be considered as due to sickness."

---

[6] The Court also does not reach the issue of whether the "process of nature" rule invoked in Athan applies here, because applying the rule would not change the result. See Athan v. Fireman's Fund Am. Life Ins. Co., 244 N.W.2d 271, 273-74 (Minn. 1976). The "process of nature" rule has been applied by some courts in cases where an accidental injury directly leads to a disability in the time required by the process of nature. Id. at 274. Under the "process of nature rule," the disability is considered to have begun at the time the accident occurred. Id.

As discussed above, Javinsky's condition may be interpreted under the Hartford Policy as a disability that began within 365 days of the automobile accident. However, to fully satisfy the Hartford Policy's definition of injury, Javinsky must also show that his bodily injury resulted "directly and independently of all other causes from an accident."

Hartford urges that Javinsky's injury does not directly and independently result from the accident, because Javinsky began suffering from lower back and leg pain several years prior to his 1996 automobile accident. Tostrud Aff., Ex. 2 at 18-21. Javinsky responds that the pain and limitations causing his total disability stem from his neck and arm pain only, and not his lower back and leg pain. However, the evidence also supports a contrary inference. In the early to mid-1990s, Javinsky collected disability benefits based on severe back pain. Id., Ex. 2 at 21. Javinsky's medical records show he experienced an exacerbation of an already existing lower back condition and increased lower back pain following the accident. Id., Ex. 5 at HART000707-08; HART0007108. In nearly all of Javinsky's documented doctor appointments, he complains of pain in both his neck and his lower back. Pl. Ex. 8 at 00190-93; 00197-202. Because a genuine issue exists as to whether Javinsky's disability resulted "directly and independently of all other causes from an accident," Javinsky's Motion is denied.

### IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment [Docket No. 15] is **DENIED**; and

2. Defendant's Motion for Summary Judgment [Docket No. 12] is **DENIED**.

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: March 8, 2010.